# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

NICKOLAS JONATHAN FREDERICK,

        Defendant-Appellant.

UNPUBLISHED
September 11, 2018

No. 338656
Wayne Circuit Court
LC No. 16-007099-01-FC

Before: SWARTZLE, P.J., and JANSEN and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of three counts of armed robbery, MCL 750.529, 17 counts of assault with a dangerous weapon (felonious assault), MCL 750.82, and one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 25 to 50 years' imprisonment for each of the armed robbery convictions, two to four years' imprisonment for each of the felonious assault convictions, and two years' imprisonment for the felony-firearm conviction. We affirm.

## I. BACKGROUND FACTS

This case arises from the robbery of MoMo's Poker Room during the early morning hours of April 1, 2016. On March 31, 2016, Michael Pennington invited his friend, defendant, to attend a charity poker tournament at MoMo's Poker Room on that evening. Pennington testified that he won $1,000 with a lottery ticket earlier that day, and thus, he had offered to pay for defendant. At some point during that day, defendant suggested to Pennington that they rob MoMo's Poker Room. Defendant once again suggested that they rob MoMo's Poker Room during the first break of the poker tournament, as defendant believed that it would be easy because the poker tournament's cash drawer was located close to the door for MoMo's Poker Room.

Later that evening, defendant's brother, Daniel Frederick, arrived at MoMo's Poker Room as well. Eventually, Pennington, defendant, and Frederick had a conversation outside of MoMo's Poker Room wherein Frederick asked Pennington if he "knew about what [defendant] was talking about with the Poker Room." Pennington replied that he had told defendant that he "didn't want nothing [sic] to do with it." Defendant then began "talking about how much money was in there, and that he would call one of his friends if [Pennington] didn't want to do it."

-1-

Defendant eventually left MoMo's Poker Room in Pennington's car, with the agreement that he would pick up Pennington later that evening.

Approximately one hour after the conversation outside of MoMo's Poker Room, Pennington asked defendant to pick him up. During the drive back to defendant's home, defendant once again raised the possibility of robbing MoMo's Poker Room. Eventually, they met up with Frederick outside of defendant's home, and Pennington was ultimately convinced to participate in the robbery as defendant and Frederick's driver.

Pennington drove defendant and Frederick to an area near MoMo's Poker Room, and defendant and Frederick exited his automobile and headed towards the building. Defendant and Frederick returned to Frederick's automobile approximately 10 to 15 minutes after they had left it. After they returned, Frederick "said somebody was in the alley and that they were pretty close to them, that they seen [sic] their face [sic], they looked right into his face." During trial, the man who operated, but did not own, MoMo's Poker Room, George Smith, also known as "MoMo," testified that he had seen two "gentlemen" in an alley near MoMo's Poker Room, and he identified defendant and Frederick as the two "gentlemen" that he saw.

Frederick suggested that they return to MoMo's Poker Room at a different time in order to rob it; however, defendant insisted that he would complete the robbery with or without Frederick, and they ultimately left Pennington's automobile. During trial, multiple witnesses described how two armed men entered MoMo's Poker Room with their faces concealed. One of the two armed men waved his gun at the crowd of poker players, and the two men procured the money held in the tournament's cashier drawer, as well as the prize money that had been set aside for the tournament's winners. Defendant and Pennington returned a short time later to Pennington's automobile. Pennington drove them back to defendant's home, and they proceeded to distribute the proceeds of the robbery amongst themselves.

## II. LAY WITNESS IDENTIFICATION

Defendant first asserts that the trial court erred when it permitted Smith to identify defendant in a video recording of surveillance footage from MoMo's Poker Room on the night of the incident. We disagree.

Generally, an issue is preserved for appellate review when it is raised before and addressed and decided by a trial court. *People v Metamora Water Serv Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007), citing *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005). However, "[t]o preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001) (citations omitted). Defense counsel did not object to the identification testimony during trial. Therefore, this issue is not preserved for appellate review.

"The decision whether to admit evidence falls within a trial court's discretion and will be reversed only when there is an abuse of that discretion." *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013), citing *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). "A trial court abuses its discretion when it makes an error of law in the interpretation of a rule of

evidence." *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015), citing *Duncan*, 494 Mich at 723. Further, "[a] trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes[.]" *People v Swain*, 288 Mich App 609, 628-629; 794 NW2d 92 (2010), citing *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). "We review such questions of law de novo." *Jackson*, 498 Mich at 257, citing *Duncan*, 494 Mich at 723.

However, "[t]his Court reviews unpreserved claims of error for plain error affecting the defendant's substantial rights." *People v Kissner*, 292 Mich App 526, 541; 808 NW2d 522 (2011), citing *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To avoid forfeiture under the plain error rule, the defendant must demonstrate that an error occurred, the error was plain, and the plain error affected substantial rights. *People v Buie*, 285 Mich App 401, 407; 775 NW2d 817 (2009), citing *Carines*, 460 Mich at 763. "The third prong requires a showing of prejudice, which occurs when the error affected the outcome of the lower court proceedings." *People v Putman*, 309 Mich App 240, 243; 870 NW2d 593 (2015), citing *Carines*, 460 Mich at 763. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error 'seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Carines*, 460 Mich at 763-764, quoting *United States v Olano*, 507 US 725, 736-737; 113 S Ct 1770; 123 L Ed 2d 508 (1993) (quotation marks omitted; alteration in original).

"Generally, all relevant evidence is admissible except as otherwise provided by either the state or the federal constitution or by court rule." *People v Fomby*, 300 Mich App 46, 48; 831 NW2d 887 (2013), citing MRE 402, and *People v Yost*, 278 Mich App 341, 355; 749 NW2d 753 (2008). "Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Fomby*, 300 Mich App at 48, citing MRE 401. "Even if evidence is relevant, it 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . .' " *Fomby*, 300 Mich App at 48, citing MRE 403, and *Yost*, 278 Mich App at 407.

MRE 701 provides that "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." However, " 'a witness cannot express an opinion on the defendant's guilt or innocence of the charged offense[.]' " *Fomby*, 300 Mich App at 53, quoting *People v Bragdon*, 142 Mich App 197, 199; 369 NW2d 208 (1985). " '[W]here a jury is as capable as anyone else of reaching a conclusion on certain facts, it is error to permit a witness to give his own opinion or interpretation of the facts because it invades the province of the jury.' " *People v Drossart*, 99 Mich App 66, 80; 297 NW2d 863 (1980) (citations omitted); see also *People v Perkins*, 314 Mich App 140, 162; 885 NW2d 900 (2016) (citing *Drossart* for the same proposition), vacated in part by *People v Perkins*, unpublished order of the Court of Appeals, entered February 12, 2016 (Docket Nos. 323454, 323876, 325741), superseded in part on other grounds sub nom *People v Hyatt*, 316 Mich App 368 (2016), and aff'd in part, rev'd in part sub nom *People v Skinner*, ___ Mich ___ (2018) (Docket Nos. 152448, 153081, 153345).

During trial, Smith identified defendant as a man who participated in the poker tournament at approximately 7:00 p.m. or 7:30 p.m. on March 31, 2016. Smith also explained that he saw defendant with "[a]nother guy" during the VFW poker tournament. A few hours later, at some time after midnight on April 1, 2016, Smith received a call from his employee, Anna Lincoln. According to Smith, Lincoln told him that there were "two guys in the alley in the back parking lot, [and] they looked kind of shady." Lincoln also told Smith that when the men saw "her come by, they went down and hid their faces." In response to Lincoln's call, Smith went to the alley. He "stood at the end of the building, and two gentlemen walked past [him]." During trial, Smith identified one of the two "gentlemen" as defendant. Smith testified that the other man was Frederick.

Smith also testified during trial that there were "maybe" seven or eight cameras around MoMo's Poker Room, and that the building also had one exterior camera which was pointed towards Telegraph Road. A video recording of surveillance footage from MoMo's Poker Room was played for the jury during trial. While the video recording was played, the prosecutor asked Smith various questions about the video recording. Smith identified defendant and Pennington as two men who entered MoMo's Poker Room in the video recording, and he also identified defendant, Frederick, and Pennington as three men who were depicted as leaving MoMo's Poker Room together. Smith described how the video recording showed Pennington, Frederick, and defendant leaving, entering, and moving about MoMo's Poker Room at various times. Notably, when the video recording reached the period of time when the robbery occurred, Smith described how the video recording depicted "[t]wo guys coming in with guns." Smith did not identify either of the "two guys" who were depicted in the portion of the video recording that showed the incident in MoMo's Poker Room.

Defendant contends on appeal that Smith's identification testimony as it pertained to the video recording of the surveillance footage impermissibly invaded the province of the jury. Defendant's contention is without merit.

Defendant only challenges particular portions of Smith's video recording identification testimony. Part of the testimony that defendant has challenged pertains to Smith's cross-examination testimony pertaining to the video recordings, testimony that defense counsel elicited during trial. That portion of Smith's testimony consisted of defense counsel questioning Smith regarding the appearance of Pennington, Smith, and "the two guys" depicted in the video recording and still photographs taken from the video recording. Regardless, defendant has waived the portion of his claim which was based on testimony specifically elicited by defense counsel. "[A] party may not harbor error at trial and then use that error as an appellate parachute[.]" *People v Szalma*, 487 Mich 708, 726; 790 NW2d 662 (2010).

The remaining portion of challenged testimony pertained to Smith's identification of defendant entering, exiting, and moving around MoMo's Poker Room before the robbery occurred. Defendant contends that Smith's testimony was not helpful to the jury, and that Smith and the jury were "equally positioned" to determine what the video recording showed. However, unlike the jury, Smith was actually present at MoMo's Poker Room on the evening March 31, 2016, through the early morning hours of April 1, 2016. Smith identified defendant as a man who was participating in the poker tournament, and as one of the two men that Smith later saw in alley outside of MoMo's Poker Room during the early morning hours of April 1, 2016.

Therefore, Smith was better situated than the jury to identify defendant on the video recordings based on his personal interactions with defendant just before the robbery of MoMo's Poker Room occurred.

Defendant also contends that Smith "did not know [defendant] but without hesitation stated that [defendant] was in fact one of the masked men in the poker room surveillance video." However, Smith did not actually identify either of the "two masked men" in the video recording of the robbery. Thus, the question of the identity of the two masked men was left solely for the jury to resolve during its deliberations. Therefore, defendant has failed to show how any error in connection with Smith's identification of defendant on the video recording of the surveillance footage from MoMo's Poker Room.

Even when assuming arguendo that it was error to permit Smith to identify defendant in the video recording, there was overwhelming evidence of defendant's guilt. In order to demonstrate plain error, a defendant must show prejudice, i.e., the error at issue affected the outcome of the proceedings. *Putman*, 309 Mich App at 243. Defendant argues that the video recording "was the most important piece of evidence purporting to link [defendant] to the crime." Defendant entirely overlooks Pennington's testimony, wherein Pennington provided an account of the entire sequence of events leading to the robbery, defendant's insistence on robbing MoMo's Poker Room, his own participation in the robbery as the "driver" for defendant and Frederick, and how he and defendant subsequently went to Greektown Casino to gamble with the proceeds from the robbery. Pennington's testimony was independently corroborated in part by a report generated from a GPS tracking device, which had been placed on Pennington's automobile due to a separate police investigation. Further, Smith testified that he saw defendant and Frederick standing in an alley outside of MoMo's Poker Room shortly before the robbery took place. Therefore, defendant's argument is entirely without merit.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Second, defendant argues that he was denied the effective assistance of counsel when trial counsel failed to object to Smith's identification testimony as it pertained to the video recording of the surveillance footage. We disagree.

To preserve a claim of ineffective assistance of counsel, a defendant must file a motion for a new trial or a *Ginther*[1] hearing to develop a record to support the claim. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). Defendant did not file a motion for a new trial or a *Ginther* hearing. Therefore, "because the trial court did not hold an evidentiary hearing, our review is limited to the facts on the record." *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000), citing *People v Hedelsky*, 162 Mich App 382, 387; 412 NW2d 746 (1987). The record on appeal "consists of 'the original papers filed in that court or a certified copy, the transcript of any testimony or other proceedings in the case appealed, and

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

the exhibits introduced.' " *People v Gingrich*, 307 Mich App 656, 659 n 1; 862 NW2d 432 (2014), quoting MCR 7.210(A)(1).

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. Findings on questions of fact are reviewed for clear error, while rulings on questions of constitutional law are reviewed de novo." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007), citing *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002) (quotation marks omitted). Generally, when "an evidentiary hearing on defendant's claims of ineffective assistance has not been held, this Court's review is limited to mistakes apparent on the record." *People v Scott*, 275 Mich App 521, 526; 739 NW2d 702 (2007).

"Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012), citing Const 1963, art 1, § 20, and US Const, Am VI. Generally, "in order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51, citing *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011), see also *Strickland v Washington*, 466 US 668, 694-696; 104 S Ct 2052; 80 L Ed 2d 674 (1984) (providing the rule stated in *Trakhtenberg*).

"Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases. There is accordingly a strong presumption of effective assistance of counsel." *Unger*, 278 Mich App at 242 (citations omitted). The fact that a particular strategy ultimately failed does not demonstrate that a defendant was denied the effective assistance of counsel. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010), citing *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

Defendant contends he was denied the effective assistance of counsel during trial because defense counsel failed to object to Smith's identification of defendant in the video recordings from MoMo's Poker Room. We disagree.

Defendant argues that his trial defense "was that he was not the person in the video," and that "[n]o valid defense strategy could involve admitting testimony that that the video showed otherwise." However, as discussed above, Smith never identified defendant as either of the two armed men depicted in the video recording. Defense counsel cross-examined Smith regarding the video recording, and through her questions, she had Smith describe differences between the appearance and clothing of defendant and the appearance and clothing of the two armed men, and she also attempted to call into question the credibility of Smith's identification of defendant in the alley outside of MoMo's Poker Room. During her closing argument, defense counsel argued that the evidence suggested that Pennington and Frederick, not defendant, committed the armed robbery, and she relied in part on the discrepancy between defendant's clothing and the clothing worn by the two armed men.

Contrary to defendant's argument, defense counsel employed a valid trial strategy of attempting to use the video recording to support her argument to the jury that defendant had not actually committed the charged offenses. The fact that her strategy ultimately failed does not mean she rendered ineffective assistance. See *Kevorkian*, 248 Mich App at 414-415. Defendant has failed to demonstrate that defense counsel's performance fell below an objective standard of reasonableness. Further, this Court has held that a defense counsel's decision to present evidence or question witnesses is presumed to be a matter of trial strategy. *People v Rockey*, 237 Mich App 74, 77; 601 NW2d 887 (1999). Therefore, defendant has failed to demonstrate that he was denied the effective assistance of counsel.

Moreover, to the extent that defendant contends that his trial counsel was otherwise ineffective for failing to object Smith's identification of defendant on the video recording on the ground that such an identification improperly invaded the province of the jury, defendant's contention is meritless. As discussed above, Smith's identification of defendant in the video recording did not improperly intrude into the province of the jury. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *Ericksen*, 288 Mich App at 201, citing *Snider*, 239 Mich App at 425. Therefore, defendant has failed to demonstrate how defense counsel's performance fell below an objective standard of reasonableness as it pertained to Smith's identification of defendant in the video recording.

## IV. OTHER ACTS EVIDENCE

Third, defendant contends that he should be granted a new trial because during trial, Taylor Police Detective Gerald Cole provided an unresponsive answer to a question posed to him by the jury, and in that answer, defendant was referred to as having been part of a separate criminal investigation. We disagree.

Defendant concedes in his brief on appeal that defense counsel did not object to Detective Cole's unresponsive testimony, and nor is there any evidence of a preserved objection present in the lower court record. Therefore, this issue is unpreserved. *Metamora Water Serv Inc*, 276 Mich App at 382, citing *Hines*, 265 Mich App at 443.

The trial court's grant or denial of a mistrial will not be reversed on appeal in the absence of an abuse of discretion." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) (citations omitted). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011) (quotation marks and citations omitted). "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant, and impairs his ability to get a fair trial." *Haywood*, 209 Mich App at 228 (citations omitted). However, "[t]his Court reviews unpreserved claims of error for plain error affecting the defendant's substantial rights." *Kissner*, 292 Mich App at 541, citing *Carines*, 460 Mich at 763-764.

At the outset, defendant contends that he is entitled to another trial based on testimony which seemingly implicated defendant in other criminal acts. It is notable that the legal framework provided by defendant in support of his argument is entirely amorphous. Defendant argues that "improper reference to a defendant's prior acts . . . violates Federal law." In support

of that proposition, defendants relies upon *United States v Ailstock*, 546 F2d 1285, 1290-1292 (CA 6, 1976), where the United States Court of Appeals for the Sixth Circuit held that evidence pertaining to one of the defendant's previous criminal acts was inadmissible under FRE 404(b) and the admission of that evidence resulted in prejudice to that defendant which necessitated a new trial.

Generally, "While the decisions of lower federal courts and other state courts are not binding on this Court, they may be considered as persuasive authority." *People v Woodard*, 321 Mich App 377, 385 n 2; 909 NW2d 299 (2017), citing *People v Jackson*, 292 Mich App 583, 595 n 3; 808 NW2d 541 (2011). Beyond citing to *Ailstock* generally, defendant provides no further explanation as to how the holding in *Ailstock* pertains to his case other than presenting a facially similar claim.

Adding to the confusion, while *Ailstock* pertains to a violation of FRE 404(b), defendant then proceeds to rely upon a string of decisions from this Court that were decided on various grounds, including whether the trial court erred in denying a defendant's motion for a mistrial, and all of which were decided before November 1, 1990.[2] See *People v Holly*, 129 Mich App 405, 415-416; 341 NW2d 823 (1983) (holding that the trial court did not err when it denied the defendant's motion for a mistrial based on an unresponsive remark made by a police officer during trial which implicated defendant in other criminal acts, and while that remark was prejudicial, reversal of the defendant's conviction was not necessary based on the overwhelming evidence of the defendant's guilt); *People v McCarver (On Remand)*, 87 Mich App 12, 15; 273 NW2d 570 (1978) (reversing the defendant's conviction based on the admission of testimony during trial that referred to the defendant as a convicted felon where the trial court had granted the defendant's motion to suppress any references to the defendant's previous conviction); *People v Wallen*, 47 Mich App 612, 614; 209 NW2d 608 (1973) (reversing the defendant's convictions based on the admission of testimony during trial pertaining to the defendant's previous criminal activities); *People v McCartney*, 46 Mich App 691, 693-694; 208 NW2d 547 (1973) (reversing the defendant's convictions based on a witness's testimony that he had previously taken the palm print of the defendant and where the witness indicated that palm prints were only taken during felony cases); *People v Page*, 41 Mich App 99, 101-102; 199 NW2d 669 (1972) (holding that a law enforcement officer's unresponsive testimony that the defendant was associated with the trafficking of narcotics was a sufficient basis to grant the defendant's motion for a mistrial).

Defendant's brief on appeal also offers little help in this regard, as defendant simply asserts that "Detective Cole's testimony error clearly affected [defendant's] substantial rights and seriously affected the fairness, integrity, or public reputation of the judicial proceedings," and that defendant "is entitled to another trial." The only other point defendant emphasizes in his brief on appeal is that law enforcement witnesses are generally held to a higher standard with

---

[2] "Published cases issued before November 1, 1990, are not precedentially binding on this Court, although they may be persuasive authority." *People v Barbarich*, 291 Mich App 468, 476 n 2; 807 NW2d 56 (2011), citing MCR 7.215(J)(1).

regard to unresponsive testimony pertaining to impermissible evidence. See *Holly*, 129 Mich App at 416; *Page*, 41 Mich App at 101. However, both *Holly* and *Page* pertained to reviewing a defendant's motion for mistrial based on the admission of unresponsive testimony by a law enforcement witness. Therefore, it appears that defendant's claim, unlabeled and nebulous as it is, is rooted in a contention that Detective Cole's testimony should have resulted in a mistrial. Thus, we will analyze defendant's claim accordingly.

"A trial court should only grant a mistrial when the prejudicial effect of the error cannot be removed in any other way." *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008) (citation omitted). Further, "an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *Haywood*, 209 Mich App at 228. During trial, Taylor Police Officer Ryan Hayne testified that he had been investigating Pennington, and that a GPS tracking device had been placed on Pennington's automobile. Pennington confirmed that he had been "offered a deal," and that he pleaded guilty to two counts of armed robbery, two counts of felonious assault, and three counts of "breaking and entering." He confirmed that he "just actually graduated from breaking and enterings [sic] into armed robbery[.]"

During Detective Cole's testimony, the trial court presented Detective Cole with a question posed by the jury: " 'What triggered the initial investigation into the defendant? What caused him to be a suspect?' " Detective Cole's response, in relevant part, was as follows:

> Okay. So there's a robbery, and we go there and we look at the video; right? And when we go there, Mr. Smith is excited about something. He knows he saw these people. He's like, 'I saw them, I saw them, I saw them.' And he's going over it, and he says, 'They were playing in the Poker Room.'

> So we look at the robbery video, right, and then we review, or I review, the other video that shows the people coming and playing poker. And obviously, Daniel Frederick's wardrobe is easily identifiable with those shoes with the bright shoelaces, it's easy to pick.

> Well, because they're together, [defendant] is together and we can see these three people interact, so we start focusing on them.

> Then lucky for me and lucky for them, they're the target of a police investigation out of a different jurisdiction, which physically puts that car there and gives us names to these people, who we then compare to the sign-in sheet of the people that came in and played poker.

Subsequently, during cross-examination, defense counsel asked Detective Cole if defendant "was not part of that previous investigation," and she then specified that the investigation she was referencing was "[t]he previous investigation that involved putting the tracker on Michael Pennington's car." Detective Cole replied, "I don't know the answer to that question."

Defendant asserts that Detective Cole's unresponsive remark that indicated defendant was the target of a separate police investigation entitles him to a new trial. Defendant's assertion is without merit.

-9-

Generally, "an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *Haywood*, 209 Mich App at 228. Defendant's assertion rests solely upon Detective Cole's unresponsive remark. Detective Cole's remark was ambiguous, as it was unclear who the "they're" he was referencing was constituted of. Regardless, even when Detective Cole's remark is construed to mean that defendant was the "target" of a separate police investigation, Detective Cole's stray remark in of itself would not have been grounds for a mistrial.

Defendant observes that in *Holly* this Court held that "[p]olice witnesses have a special obligation not to venture into such forbidden areas." *Holly*, 129 Mich App at 415-416. However, as noted above: "Published cases issued before November 1, 1990, are not precedentially binding on this Court, although they may be persuasive authority." *People v Barbarich*, 291 Mich App 468, 476 n 2; 807 NW2d 56 (2011), citing MCR 7.215(J)(1). Regardless, even if *Holly* was found to be persuasive, this Court ultimately held that the defendant's conviction should be affirmed based on the overwhelming evidence against defendant which was presented during trial. *Holly*, 129 Mich App at 416. And as discussed above, the evidence presented against defendant was overwhelming. Therefore, the same result would issue even if the higher standard provided by *Holly* were to apply.

## V. SCORING ERRORS

Finally, defendant argues that the trial court erred when it assessed various offense variables ("OVs") during sentencing. We disagree.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), citing *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). "A finding is clearly erroneous if this Court is left with the definite and firm conviction that a mistake has been made." *People v Allen*, 295 Mich App 277, 281; 813 NW2d 806 (2011), *citing People v Akins*, 259 Mich App 545, 564; 675 NW2d 863 (2003). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438, citing *People v Babcock*, 469 Mich 247, 253; 666 NW2d 231 (2003).

"When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR [presentence investigation report], plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015), citing *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012). When reviewing the record evidence, a trial court may make "reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012), aff'd 495 Mich 33 (2014), citing *People v Haacke*, 217 Mich App 434, 436; 553 NW2d 15 (1996). A trial court can find that a defendant committed a dismissed charge by a preponderance of the evidence. *People v Nix*, 301 Mich App 195, 205; 836 NW2d 224 (2013), citing *People v Drohan*, 475 Mich 140, 142-143; 715 NW2d 778 (2006), overruled in part on other grounds by *People v Lockridge*, 498 Mich 358, 377-378; 870 NW2d 502 (2015).

"Offense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable." *People v McGraw*, 484 Mich 120, 133; 771 NW2d 655 (2009). As explained by the Michigan Supreme Court:

> "The sentencing offense determines which offense variables are to be scored in the first place, and then the appropriate offense variables are generally to be scored on the basis of the sentencing offense. The primary focus of the offense variables is the nature of the offense; the characteristics of the offender are primarily considered under the prior record variables." [*People v Sargent*, 481 Mich 346, 348; 750 NW2d 161 (2008).]

While the trial court is "limited to considering the sentencing offense alone" when it assess an offense-specific OV, the trial court "may properly consider all of defendant's conduct during that offense." *People v Chelmicki*, 305 Mich App 58, 72; 850 NW2d 612 (2014) (quotation marks and citation omitted).

Defendant argues that he was improperly assessed 10 points under OV 4, MCL 777.34 (psychological injury to victim), because there was no evidence in the record that indicated any of the victims of the armed robbery suffered a serious psychological injury, and that any evidence that the victims of the felonious assaults may have suffered serious psychological injuries was irrelevant because defendant's "sentencing offense" was armed robbery. Defendant's argument fails.

According to MCL 777.34(1), OV 4 pertains to "psychological injury to a victim." A defendant should be assessed 10 points under OV 4 if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). Similarly, MCL 777.34(2) provides that a trial court should assess 10 points "if the serious psychological injury may require professional treatment," and that when making that determination, "the fact that treatment has not been sought is not conclusive."

During sentencing, the trial court noted that "one of the [felonious assault] victims testified that she had recurring psychological effects from this [i.e., the incident at MoMo's Poker Room], sleepless nights, and fear of going out and issues related to this." The trial court did not remember the name of that witness. However, it appears that the trial court was referring to the testimony of Holly Hamilton, who testified that following the incident she had only returned to MoMo's Poker Room once, and she referenced "images that don't leave your mind."

The trial court also referenced Gary Evans's testimony, as he testified that the incident at MoMo's Poker Room resulted in a "recurrence and aggravation of his PTSD that he suffered from when he was active duty in the war . . . ." Therefore, the trial court concluded that an assessment of 10 points under OV 4 was proper.

Defendant does not dispute the accuracy of the trial court's findings in support of its assessment of OV 4. Rather, defendant argues that the trial court should only considered whether any of the three victims identified with regard to each count of armed robbery suffered a serious psychological injury. Defendant properly notes that OV 4 is an offense-specific variable because it does not contain language that provides otherwise. Defendant then improperly

concludes that the trial court was required to only assess OV 4 with regard to his "sentencing offense" of armed robbery. However, while the trial court is "limited to considering the sentencing offense alone" when it scores an offense-specific OV, the trial court "may properly consider all of defendant's conduct during that offense." *Chelmicki*, 305 Mich App at 72. Therefore, the trial court did not err when it considered Hamilton's and Evans's severe psychological injuries that arose during the incident.

Defendant asserts that the trial court improperly assessed 15 points under OV 10, MCL 777.40 (exploitation of vulnerable victim), because there was no evidence that he engaged in predatory conduct. Defendant's assertion fails.

"OV 10 should have 15 points assessed when the defendant has engaged in 'predatory conduct' to 'exploit [ ] . . . a vulnerable victim.' MCL 777.40(1)(a)." *People v Huston*, 489 Mich 451, 454; 802 NW2d 261 (2011), quoting MCL 777.40(1)(a) (alteration in original). As explained by this Court, " 'predatory conduct under [MCL 777.40] is behavior that is predatory in nature, precedes the offense, [and is] directed at a person for the primary purpose of causing that person to suffer from an injurious action . . . .' " *People v Kosik*, 303 Mich App 146, 159-160; 841 NW2d 906 (2013), quoting *Huston*, 489 Mich at 463 (second alteration in original). "However, predatory conduct does not encompass '*any* preoffense conduct, but rather only those forms of preoffense conduct that are commonly understood as being predatory in nature . . . as opposed to purely opportunistic criminal conduct or preoffense conduct involving nothing more than run-of-the-mill planning to effect a crime or subsequent escape without detection.' " *Kosik*, 303 Mich App at 160, quoting *Huston*, 489 Mich at 463.

Further, "a defendant's 'predatory conduct,' by that conduct alone (*eo ipso*), can create or enhance a victim's 'vulnerability.' " *Huston*, 498 Mich at 454. A defendant's preoffense predatory conduct need not be directed at a specific victim, if the defendant's preoffense predatory conduct was directed at "*a* victim." *Id*. at 463.

During sentencing, the trial court found that assessing defendant 15 points under OV 10 was proper based on Pennington's testimony that defendant repeatedly remarked about the amount of money that was present inside of MoMo's Poker Room, and that defendant was planning the robbery while he was inside MoMo's Poker Room. Moreover, the trial court relied in part on the video recording of the surveillance footage taken from MoMo's Poker Room, wherein defendant could be seen "looking around" the area.

Defendant argues that the trial court erred because defendant's conduct was "purely opportunistic," and that his victims "were not inherently vulnerable, and were not rendered more vulnerable by the manner in which the robbery was committed." During trial, Pennington testified that he and defendant participated in the charity poker tournament held at MoMo's Poker Room. According to Pennington, defendant repeatedly mentioned robbing MoMo's Poker Room, and that defendant explained during a break in the charity poker tournament how the robbery would be easy because the cash drawer was close to the door. After defendant mentioned the vulnerability of the cash drawer inside of MoMo's Poker Room, both Pennington and defendant reentered the building and continued to play poker for some time.

Later, after defendant had run out of money while playing poker, Frederick arrived, and defendant, Frederick, and Pennington had a conversation outside of MoMo's Poker Room wherein defendant once again talked "about how much money was in there, and that he would call one of his friends if [Pennington] didn't want to do it." Defendant left MoMo's Poker Room shortly thereafter, and when picked up by Pennington approximately one hour later, he disclosed to Pennington that he had retrieved a revolver from one his friends, and that Frederick was heading over to participate in the robbery.

Contrary to defendant's assertion, defendant's robbery of MoMo's Poker Room was not the product of mere opportunistic criminal conduct. Rather, defendant used his participation in the charity poker tournament at MoMo's Poker Room to identify vulnerabilities and how susceptible it would be to a robbery. Moreover, defendant and Frederick were lying in wait before the robbery in order to strike at the opportune time, according to Smith's testimony that he saw defendant and Frederick in a nearby alley before the robbery. While defendant's preoffense predatory conduct was not directed at a specific victim, his exploitation of the trust afforded to him during the charity poker tournament permitted defendant to ensure that his eventual victims would be susceptible to an easy robbery. Therefore, there was ample evidence to permit a finding that defendant engaged in predatory conduct, and that defendant's predatory conduct rendered defendant's victims more vulnerable.

Defendant contends that the trial court erred when it assessed 25 points under OV 12, MCL 777.42 (contemporaneous felonious acts), because defendant's sole act of waving a gun at a crowd of 25 poker players does not show that defendant committed other contemporaneous felonious acts. Defendant's contention fails.

"Under MCL 777.42, OV 12 establishes the scoring guidelines for the trial court to use 'to determine whether [a] defendant engaged in any contemporaneous felonious criminal acts.' " *People v Light*, 290 Mich App 717, 721; 803 NW2d 720 (2010), quoting *People v Bemer*, 286 Mich App 26, 32; 777 NW2d 464 (2009) (quotation marks omitted; alteration in original). As explained by this Court, " 'if [the] defendant did engage in contemporaneous felonious criminal acts, the trial court [must] evaluate the number of acts and whether the acts constituted crimes against a person or other crimes, see MCL 777.42(1)(a) to (f), and then assign the number of points attributable to the [corresponding subdivision of the statute] that has the highest number of points,' MCL 777.42(1).' " *Light*, 290 Mich App at 721, quoting *Bemer*, 286 Mich App at 32 (quotation marks omitted; alteration in original).

If the trial court finds that a defendant committed three contemporaneous felonious criminal acts involving crimes against a person, then the trial court should assess 25 points under OV 12. MCL 777.42(1)(a). However, "when scoring OV 12, a court must look beyond the sentencing offense and consider only those separate acts or behavior that did not establish the sentencing offense." *Light*, 290 Mich App at 723.

During sentencing, the trial court found that defendant had committed five contemporaneous felonious criminal acts involving crimes against a person because it found that the five counts of felonious assault that were dismissed due to defendant's motion for a directed verdict were supported by testimony that was taken during defendant's preliminary examination. Specifically, the trial court explained that the five witnesses associated with those dismissed

-13-

charges failed to appear during trial, but that "they did testify during at the preliminary exam[ination]."

Defendant does not dispute the accuracy of the trial court's findings, but rather, he argues that the trial court erred when it considered the five dismissed counts of felonious assault because each count of felonious assault that defendant was charged with arose "from the same act of waiving [sic] a gun at a crowd of poker players." Essentially, defendant contends that the dismissed counts of felonious assault should not have been considered because each felonious assault count arose from a single action, i.e., defendant's waving of his arm with a pistol in hand at a large group of people. Defendant does not explain why each felonious assault, dismissed or otherwise, should not be considered a separate act, nor does defendant provide any legal authority in support of this proposition. A party " 'may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.' " *People v Henry*, 315 Mich App 130, 148; 889 NW2d 1 (2016), quoting *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Therefore, defendant has abandoned this contention on appeal.

And finally, defendant asserts that the trial court erred when it assessed 10 points under OV 14, MCL 777.22 (leader in a multiple offender situation), because there was insufficient evidence demonstrating that defendant was a leader in a multiple offender situation. Defendant's assertion has no merit.

"Under MCL 777.22, OV 14 must be scored for all felony offenses." *People v Dickinson*, 321 Mich App 1, 21; 909 NW2d 24 (2017). MCL 777.44 provides:

(1) Offense variable 14 is the offender's role. Score offense variable 14 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

(a) The offender was a leader in a multiple offender situation…………...10 points

(b) The offender was not a leader in a multiple offender situation...............0 points

(2) All of the following apply to scoring offense variable 14:

(a) The entire criminal transaction should be considered when scoring this variable.

(b) If 3 or more offenders were involved, more than 1 offender may be determined to have been a leader.

As explained by this Court, when determining whether a defendant was a leader "for purposes of an OV 14 analysis, a trial court should consider whether the defendant acted first or gave directions or was otherwise a primary causal or coordinating agent." *Dickinson*, 321 Mich App at 22 (quotation marks and citation omitted). Further, "the plain meaning of 'multiple offender situation' as used in OV 14 is a situation consisting of more than one person violating the law while part of a group." *Id.* (quotation marks and citation omitted).

During sentencing, the trial court found that defendant was a leader in a multiple offender situation because defendant "was encouraging the robbery from the beginning," and that according to Pennington, defendant "was the one that finally got Mr. Pennington to agree to do it." The trial court also observed that defendant insisted on proceeding with the robbery after Frederick stated he did not want to perform the robbery. Indeed, during trial, Pennington testified that defendant repeatedly brought up the idea of robbing MoMo's Poker Room, that defendant and Frederick convinced him to participate in the robbery despite his initial reservations, and that defendant insisted on performing the robbery "with or without" Frederick after Frederick expressed hesitation in carrying out the robbery after "somebody" saw defendant and Frederick in an alley near MoMo's Poker Room.

Contrary to defendant's assertion that there was no evidence that defendant acted as a leader, defendant's persistent encouragement of the robbery rendered him a primary causal agent of that event. Defendant, with Frederick, convinced Pennington to act as their driver for the robbery. And defendant insisted on performing the robbery after Frederick developed reservations about proceeding with that act. Defendant in no small part caused the robbery to occur, and he exerted his leadership over Frederick and Pennington. And finally, defendant does not challenge the trial court's finding that the robbery was in fact a multiple offender situation. Therefore, defendant's assertion is wholly without merit, as there was ample evidence that defendant was the leader in a multiple offender situation.

Affirmed.

/s/ Brock A. Swartzle
/s/ Kathleen Jansen
/s/ Colleen A. O'Brien